FILED - USDC -NH
2023 JUN 13 PM12:12

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

EVAN W. GRAY,

               Plaintiff,

v.

CHESTER L. GRAY III, Trustee,

               Defendant.

Case No. 1:22-CV-560-LM

**AMENDED COMPLAINT**

PLAINTIFF EVAN W. GRAY, as and for his Amended Complaint against
defendant Chester L. Gray III, filed by Plaintiff as of right pursuant to Rule 15(a)(1)(B) of the
Federal Rules of Civil Procedure and Paragraph 3 of the Stipulation dated January 24, 2023
(Doc. No. 17-1) implemented upon Endorsed Order of the Court entered February 27, 2023,
granting Plaintiff's Assented to Motion to Implement Stipulation (Doc. No. 17) , states:

### INTRODUCTION

This is an action for breach of fiduciary duty, constructive trust, and settlement of the
second annual trust account of the Chester L. Gray, Jr. Trust of 1996 (the "1996 CLG Trust").
Defendant is the trustee of the 1996 CLG Trust.

Plaintiff originally commenced an action asserting three claims covering this annual
account and the third annual account of the CLG Trust in July 2020 in this Court, but the
presiding judge admonished Plaintiff for having done so, for the stated reason that trust
accounting claims should be adjudicated in the New Hampshire state probate courts with
specialized expertise in trust accounting matters, rather than in federal court.  Accordingly,

Plaintiff voluntarily dismissed such claims without prejudice, without costs, and without objection by Defendant, effective July 11, 2022. Plaintiff subsequently commenced an action against Defendant in the Ninth Circuit Court of New Hampshire, Probate Division, Nashua (the "Nashua Probate Court"), on November 14, 2022, by Petition for Breach of Fiduciary Duty, Constructive Trust, and to Surcharge Trustee, Probate Court Case No. 316-2022-EQ-02729 ("Probate Case 2729"). The petition in Probate Case 2729 included the three claims that had been asserted in the action commenced in July 2020 in this Court, and also challenged Defendant's administration of the 1996 CLG Trust during the fifth annual accounting period.

Having not objected to the voluntary dismissal without prejudice of the action commenced in July 2020 in this Court, Defendant inexplicably removed Probate Case 2729 back to this Court, despite the Court's lack of specialized expertise in trust accounting matters. By Order dated May 30, 2023, the Court denied Plaintiff's motion to remand Probate Case 2729 to the Nashua Probate Court. Because only the first two claims as stated by Plaintiff in the petition in Probate Case 2729 satisfy the amount in controversy required for the Court to exercise removal jurisdiction based on diversity of citizenship, Plaintiff hereby files this Amended Complaint limited to such claims, and Plaintiff no longer asserts in this federal action the claims concerning the third and fifth annual accounts of the 1996 CLG Trust. Plaintiff will refile such claims in the Nashua Probate Court, which has the specialized expertise in trust accounting that a judge of this Court identified as the reason that such matters should be adjudicated in New Hampshire probate court, rather than in a federal court.

As one of many ongoing breaches of fiduciary duty reflected in his second annual account, Defendant trustee Chester L. Gray III breached his fiduciary duties to Plaintiff trust beneficiary and distributee in October 2018 by misappropriating and transferring more than

2

$165,000 from the assets of the 1996 CLG Trust in order to serve Chester L. Gray III's personal interests.  Defendant Chester L. Gray III misappropriated the 1996 CLG Trust assets in an attempt to avoid personal liability in his former capacity as estate executor, both by surcharge and by liability under a fiduciary bond, as a result of his prior fraud, theft and conversion of life insurance proceeds payable to the designated beneficiary thereunder -- the successor trustee(s) of a 1985 Connecticut trust over which defendant Chester L. Gray III had no authority or right to act, and over which defendant Chester L. Gray IIII knew he had no authority or right to act.

Defendant Chester L. Gray III used the stolen life insurance proceeds to pay attorneys Ralph F. Holmes and McLane Middleton, P.A., for the personal benefit and protection of defendant Chester L. Gray III.   Holmes and other individuals at McLane Middleton, P.A., knowingly induced and aided and abetted the October 2018 breaches of fiduciary duty by defendant Chester L. Gray III.  The misappropriated 1996 CLG Trust assets were placed by defendant Chester L. Gray III and Holmes in an attorney escrow account of McLane Middleton, P.A., without any authority under the 1996 CLG Trust agreement and for the personal benefit of defendant Chester L. Gray III.

Plaintiff seeks the imposition of a constructive trust on such funds and the restoration of such funds to the 1996 CLG Trust, together with relief arising from defendant Chester L. Gray III's other fiduciary duty breaches during the period of the second annual account of the 1996 CLG Trust.

## THE PARTIES

1.      Plaintiff Evan W. Gray ("Plaintiff") is a qualified beneficiary and distributee of the 1996 CLG Trust.

3

2.      Plaintiff also presently is the successor executor of the Estate of Chester L. Gray, Jr. (the "CLG Estate"). The CLG Estate is a New Hampshire estate that is currently being probated in the Second Circuit Court of New Hampshire, Probate Division, Haverhill (the "Estate Probate Court"), Docket No. 315-2017-ET-00288 (the "Estate Proceeding"). Plaintiff also is an attorney admitted to practice law in the State of New York who has been practicing in law firms since 1987.

3.      Defendant Chester L. Gray III ("CGIII" or "Defendant") is the trustee of the 1996 CLG Trust. CGIII formerly was the executor the CLG Estate, but his appointment was revoked for cause by the Estate Probate Court in the Estate Proceeding in March 2021.

**JURISDICTION**

4.      The Court determined in the Order dated May 30, 2023, that it had removal diversity jurisdiction over Probate Case 2729. Plaintiff files this Amended Complaint without prejudice to Plaintiff's position that Probate Case 2729 should have been remanded to the Nashua Probate Court, without prejudice to such an order on reconsideration, and without prejudice to Plaintiff's right to appeal the denial of Plaintiff's motion to remand Probate Case 2729 to the Nashua Probate Court after entry of judgment herein.

**FACTUAL BACKGROUND**

5.      Plaintiff is a son of Barbara J. Gray ("BJG"), who died on April 9, 2013, and Chester L. Gray, Jr. ("CLG"), who died on April 26, 2017.

6.      Defendant CGIII also is a son of BJG and CLG.

7.      The 1996 CLG Trust, as amended in February 2011, designated CGIII as successor trustee to CLG thereunder.

8.      The Will of CLG designated CGIII as executor thereunder.

4

9.     Following the death of CLG, CGIII began acting as executor of the CLG Estate and as trustee of the 1996 CLG Trust.

10.    On May 23, 2017, CGIII sent an electronic mail message to Plaintiff providing a limited amount of information about CLG's assets.  This message from CGIII included the following statements: "There is an insurance policy with Penn Mutual of around $50K. Another insurance policy with Phoenix . . . also has about $50K."

11.    On May 24, 2017, Plaintiff sent an electronic mail message to CGIII in response to the CGIII's May 23, 2017 message, in which message Plaintiff stated: "With respect to the insurance policies, please identify the beneficiaries, as such policies are not likely to be part of [CLG's] trust or estate . . . ."

12.    CGIII, in his capacities as trustee of the 1996 CLG Trust and executor of the CLG Estate, owed fiduciary duties to Plaintiff to respond to reasonable requests for information concerning the 1996 CLG Trust and the CLG Estate.

13.    Plaintiff's May 24, 2017, request for the identification of the beneficiaries of the two life insurance policies referenced by CGIII in CGIII's May 23, 2017, message was a reasonable request by Plaintiff for information concerning the 1996 CLG Trust and the CLG Estate.

14.    CGIII never responded to Plaintiff's request that CGIII identify the beneficiaries of the two life insurance policies to Plaintiff.

15.    CGIII commenced the Estate Proceeding by filing a Petition for Estate Administration of the CLG Estate with the Estate Probate Court on or about May 24, 2017 (the "Estate Petition").  In the Estate Petition, CGIII declared that the value of the CLG Estate was $19,000 of personal property, and CGIII sought to avoid disclosing any further information about

5

the CLG Estate to interested parties by filing for waiver of full administration.  Although CGIII knew about the life insurance policies, CGIII did not include any amount for them in the Estate Petition.

16.    CGIII's omission of the life insurance from the assets of the CLG Estate in the Estate Petition was consistent with basic life insurance and probate law principles, since life insurance is a contract payable to a named beneficiary upon the death of the insured, and the proceeds from the life insurance are not part of the probate estate of the insured decedent and pass directly upon death of the insured to the beneficiary (or beneficiaries) designated under the life insurance policies. *See, e.g., Sun Life Assurance Co. v. Plaisted*, No. 09-CV-108-SM, 2009 DNH 2009, 2009 WL 2246755 at *3 (D.N.H. July 27, 2009) (life insurance policies, IRAs and annuities "are not part of an originator's estate [and] pass automatically at death to the named beneficiary") (quoting *In re Estate of McIntosh*, 146 N.H. 474, 477-78, 773 A.2d 649, 652-53 (2001)); *Dubois v. Smith*, 135 N.H. 50, 58, 61, 599 A.2d 493, 498, 500 (1991); *In re Estate of McIntosh*, 146 N.H. 474, 477-78, 773 A.2d 649, 652-53 (2001) (applying same rules as life insurance to IRA account); *Estate of Frederick (Frederick)*, 141 N.H. 530, 532-33, 687 A.2d 711, 713-14 (1996) (applying same rules as life insurance to annuity contract); *Estate of Tremaine (Tremaine)*, 146 N.H. 674, 675-76, 780 A.2d 522,  524 (2001).

17.    Plaintiff received a copy of the Estate Petition from then counsel for CGIII, Catherine Richmond ("Richmond") of the law firm Stebbins Bradley P.A. ("Stebbins"), on or about May 27, 2017.

18.    Upon Plaintiff's receipt and review of a copy of the Estate Petition, Plaintiff reasonably relied upon CGIII's omission of the life insurance from the Estate Petition as a representation by CGIII that the life insurance was not part of the CLG Estate.  Plaintiff continued

thereafter to await CGIII's response to Plaintiff's May 24, 2017, request that CGIII identify the life insurance beneficiaries to Plaintiff.

19.     Within a few days of CGIII's submission of the Estate Petition, Phoenix Life Insurance Company ("Phoenix") specifically informed CGIII, by letter dated May 22, 2017, as follows: "Our records indicate that the proceeds are payable to a trust dated 11/13/1985." Phoenix further requested in that letter that CGIII provide, among other documents, "completion and return of the enclosed Certification of Trust Agreement, signed by the Trustee(s)," and "completion and return of the enclosed Beneficiary Statement, signed by the Trustee(s)."

20.     CGIII willfully concealed from Plaintiff the information provided by Phoenix in the May 22, 2017, letter to CGIII.  Plaintiff only learned of and obtained a copy of the May 22, 2017, letter from Phoenix to CGIII a year later, in May 2018, when Plaintiff received CGIII's responses to formal document requests propounded by Plaintiff to CGIII in the Estate Proceeding.

21.     At the time that CGIII received the May 22, 2017, letter from Phoenix, CGIII had in his possession, custody and control multiple documents that confirmed that the designated beneficiary of the Phoenix life insurance policy of CLG was BJG, as "Trustee . . . under a written trust with Chester L. Gray, Jr. dated November 13, 1985, as amended, or the successor(s) in trust" of BJG.  These documents included:

        a.     A letter dated November 14, 1985, that CLG sent to Phoenix, on CLG's business letterhead, in which CLG stated: "Please change the beneficiary of the subject policy to be as follows: <u>Primary Beneficiary</u>: Barbara J. Gray as Trustee, and her successors in trust, under a certain revocable trust instrument dated November 13, 1985 made by Chester L. Gray, Jr., as Settlor, as the same may be amended."

7

b.      A copy of the Phoenix form "Designation of Trustee(s) to Receive Death Proceeds in One Sum" signed by CLG on December 10, 1985, as policy "Insured" and "Owner," and by BJG, as "Individual Trustee," which document stated in pertinent part: "All previous beneficiary designation and elections of settlement option(s) for death proceeds on the life of the insured under each policy numbered above are revoked. Said death proceeds . . . shall be paid in one sum to the following designated beneficiary: BARBARA J. GRAY, Trustee(s) ... under a written trust with Chester L. Gray, Jr. dated November 13, 1985, as amended, or the successor(s) in trust."

22.      CGIII willfully concealed from Plaintiff the documents referenced in Paragraph 21.a and 21.b of this Complaint, and the information contained therein. Plaintiff only learned of and obtained copies of the documents referenced in Paragraph 21.a and 21.b of this Complaint in May 2018, when Plaintiff received CGIII's responses to formal document requests propounded by Plaintiff to CGIII in the Estate Proceeding.

23.      At the time that CGIII received the May 22, 2017, letter from Phoenix, CGIII also had in his possession, custody and control multiple documents that confirmed that the designated beneficiary of the Penn Mutual Life Insurance Company ("Penn Mutual") policy also was the successor trustee(s) under the November 13, 1985, trust of CLG. These documents included:

a.      A letter dated November 14, 1985, that CLG sent to Penn Mutual, on CLG's business letterhead, in which CLG stated: "Please change the beneficiary of the subject policy to be as follows: <u>Primary Beneficiary</u>: Barbara J. Gray as Trustee, and her successors in trust, under a certain revocable trust instrument dated November 13, 1985 made by Chester L. Gray, Jr., as Settlor, as the same may be amended."

b.      A copy of the Penn Mutual form "Owner and Beneficiary Designation -- One Sum Death Benefit" signed by CLG on December 3, 1985, as policy "Insured" and "Owner," which document identified the "Primary Beneficiary" of the Penn Mutual policy as: "Barbara J. Gray, as trustee under trust agreement dated November 13, 1985, or her successors in trust."

24.      CGIII willfully concealed from Plaintiff the documents referenced in Paragraph 23.a and 23.b of this Complaint, and the information contained therein. Plaintiff only learned of and obtained copies of the documents referenced in Paragraph 23.a and 23.b of this Complaint in May 2018, when Plaintiff received CGIII's responses to formal document requests propounded by Plaintiff to CGIII in the Estate Proceeding.

25.      When CGIII learned in May/June 2017 that the designated beneficiary of CLG's Phoenix and Penn Mutual life insurance policies was the successor trustee(s) of BJG under CLG's trust dated November 13, 1985 (the "1985 CLG Trust"), CGIII knew, or reasonably should have known, that due to CGIII's poor status, reputation and background within his family in November 1985, there was little or no possibility that CGIII was named by CLG as a successor trustee under the 1985 CLG Trust. In particular, CGIII knew that as of November 1985:

a. Although CGIII was then 30 years of age, he had never held any position of employment for more than a few months and had never held any position of employment of any significant responsibility.

b. CGIII suffered a nervous breakdown in or about 1974 and CGII was institutionalized as a mental patient at a hospital in Massachusetts. CGIII was diagnosed as schizophrenic at this time.

c. From at least the mid-1970s through the early to mid-1980s, CGIII abused drugs of various kinds in great excess. As a result of CGIII's excessive and prolonged drug abuse, CGIII claims to have little memory of the details of these years of his life.

d. CGIII's father, CLG, characterized CGIII as follows in a writing to CGIII dated March 26, 1975: "I have somehow allowed a monster to develop, the ultimate sponge, totally self centered, irresponsible, insensitive to the feelings, expectations, needs and rights of others, dedicated to wasting his life in self indulgence at everyone else's expense."

e. After CGIII graduated from college in the late 1970s with a degree in anthromusicology, CGIII lived in a small, remote hut in the woods near Hanover, New Hampshire, that had a wood stove as its only heating source. CGIII rarely bathed and smelled so strongly of body odor and wood stove smoke that it was unbearable for anyone to spend any time with him in a confined place such as an automobile or internal building space.

f. CGIII's first job after graduating from college was as a dishwasher at a Hanover, New Hampshire, restaurant. While CGIII was working at this job, he was arrested for rape, in part due to CGIII's slovenly and unkempt appearance.

g. For some years in the late 1970s and early 1980s, CGIII periodically lived as a "bum," eating food scraps out of public garbage cans on the street.

h. In or about the early or mid-1980s, CGIII once got down on his knees in the middle of the main street in Hanover, New Hampshire, stopping traffic on the street, while making gestures to the sky and talking to himself (or "Jesus") loudly.

26.     After CGIII learned in May/June 2017 that the designated beneficiary of both the Phoenix and Penn Mutual life insurance policies of CLG was the successor trustee(s) of BJG under the 1985 CLG Trust, CGIII made no effort to obtain a copy of the 1985 CLG Trust. In

particular: (i) CGIII did not travel to CLG's residence in New Hampshire to search for the 1985 CLG Trust; (ii) CGIII did not make any systematic review of the documents contained in the file cabinets in CLG's basement home office at CLG's New Hampshire residence, which basement home office was the primary location of CLG's files, (iii) CGIII did not try to contact anyone that CLG knew in 1985; (iv) CGIII did not try to contact anyone that CLG worked with in Connecticut in 1985, such as the secretary that had typed CLG's beneficiary designation letters referenced in Paragraphs 21.a and 23.a above, or any of CLG's co-lawyers at CLG's place of work in Connecticut; (v) CGIII did not try to contact any lawyers that CLG had ever retained; (vi) CGIII did not contact either of his brothers, including Plaintiff, for information regarding the 1985 CLG Trust; and (vii) CGIII did not search any of the boxes of files that CLG had retained from CLG's places of work from the early 1960s until CLG's retirement in or about 1991. CGIII also did not petition in the Estate Proceeding, or any other court, for instructions regarding the proper treatment of the life insurance proceeds from CLG's Phoenix and Penn Mutual Life Insurance Policies.

27.    Instead of making any effort to locate the 1985 CLG Trust, and instead of responding to Plaintiff's May 24, 2017, written request that CGIII identify the beneficiaries of the Phoenix and Penn Mutual life insurance policies to Plaintiff, CGIII caused his counsel Richmond to write letters to Phoenix and Penn Mutual on July 24, 2017 -- just forty days after CGIII had been appointed as executor of the CLG Estate. In those letters, Richmond, on behalf of CGIII, expressly acknowledged that "it is our understanding that the named beneficiary of this policy is the Chester L. Gray, Jr., Trust dated November 13, 1985." In those letters, Richmond, on behalf of CGIII, then falsely represented to Phoenix and Penn Mutual that CGIII "has made a diligent search of his father's documents and was unable to find a trust dated November 13, 1985."

28. CGIII willfully concealed from Plaintiff the July 24, 2017, letters from Richmond to Phoenix and Penn Mutual, and the information contained therein. Plaintiff only learned of and obtained copies of such letters at a deposition of CGIII in the Estate Proceeding held on July 16, 2018. CGIII withheld these two documents from CGIII's May 2018 responses to formal document requests propounded by Plaintiff to CGIII in the Estate Proceeding

29. As a direct result of (i) CGIII's willful concealment from Plaintiff of the identity of the beneficiary of CLG's Phoenix and Penn Mutual life insurance policies, and (ii) CGIII and Richmond's willful misrepresentations to Phoenix and Penn Mutual that CGIII supposedly had "diligently" searched for the 1985 CLG Trust, CGIII wrongfully obtained from Phoenix and Penn Mutual, and deposited in CGIII's CLG Estate bank account at SalemFive bank, in August 2017, payments totaling $165,584.52, in life insurance proceeds that belonged to the successor trustee of the 1985 CLG Trust.

30. Attorney Ralph F. Holmes ("Holmes") first appeared as a representative of CGIII in a letter dated October 11, 2017, sent by Holmes to Plaintiff with respect to the 1996 CLG Trust. In the letter, Holmes indicated that CGIII would not provide Plaintiff with any further information about the 1996 CLG Trust until the first annual account of the 1996 CLG Trust was due in May 2018.

31. CGIII not having provided information to Plaintiff regarding the CLG Trust or the CLG Estate since his May 23, 2017, message, and Holmes having indicated that CGIII would not provide any further information until the first annual trust account, Plaintiff submitted a Petition for Full Administration on October 26, 2017, for filing in the Estate Proceeding. The Petition for Full Administration was granted by the Probate Court on November 29, 2017.

32.     As a consequence of the granting of the Petition for Full Administration, CGIII filed an Inventory of Fiduciary in the Estate Proceeding on or about February 26, 2018 (the "Initial Inventory"). In the Initial Inventory, CGIII listed as "Other Miscellaneous Personal Property" of the CLG Estate the Phoenix and Penn Mutual life insurance policies, with an aggregate valuation of $161,800.20. This was the first information that Plaintiff had received from CGIII with respect to the life insurance policies since May 23, 2017, despite Plaintiff's May 24, 2017, request to CGIII to identify the beneficiaries of the life insurance policies to Plaintiff, and Plaintiff's notification to CGIII therein that the life insurance would not likely be part of CLG's estate.

33.     Plaintiff received on May 3, 2018, in the Estate Proceeding CGIII's answers to Plaintiff's first discovery requests therein, including some documents concerning the Phoenix and Penn Mutual life insurance. It was only after Plaintiff was able to review these documents that Plaintiff discovered that the beneficiary of both the Phoenix and Penn Mutual life insurance polices was BJG, as trustee, or her successor(s) in trust, under the 1985 CLG Trust agreement.

34.     By contrast with CGIII's complete lack of diligent effort to locate the 1985 CLG Trust, and despite Plaintiff's lack of access to the files that would have identified other specific people to contact, after Plaintiff learned of the existence of the 1985 CLG Trust in May 2018, Plaintiff was able to identify the location of the original executed 1985 CLG Trust by making phone calls to just five people. Although there were delays at each stage while Plaintiff waited for responses from the persons contacted, it took Plaintiff just a few hours of work total to locate the original 1985 CLG Trust. Plaintiff identified the location of the original 1985 CLG Trust on or about September 12, 2018, in the custody of a law firm in Connecticut.

35.     The 1985 CLG Trust was formed, and is governed, under Connecticut law. The 1985 CLG Trust confirms on its very first page that the life insurance proceeds that CGIII has converted were the central assets of the 1985 CLG Trust, stating: "The Settlor has delivered or may hereafter deliver certain property to the Trustee, which property may include life insurance policies payable to the Trustee as beneficiary.  That property, including the proceeds of any such life insurance, and any other property that may be added to this trust shall constitute the trust property."  Part II, Section 5, of the 1985 CLG Trust is entitled "Provisions with Respect to Life Insurance Policies and Proceeds," and provides in pertinent part (emphasis added):  "Upon the maturity of any policy held hereunder, the Trustee shall collect all sums payable but shall not be required to begin any legal proceedings to collect sums due under any policy until indemnified. The amounts that the Trustee shall be entitled to collect on those policies shall include all amounts in any way derived from those policies, including, but not limited to, additional insurance purchased by dividends, dividends left at interest together with that interest, annual dividends and any special, final or post mortem dividend of distribution.  **The Executor or Administrator of the Settlor's estate shall not be entitled to receive any of those amounts from the Trustee."**

36.     As CGIII and Plaintiff knew would be the case due to CGIII's extremely poor reputation within the family in 1985, Part III, Section 3(d) of the 1985 CLG Trust provides for Scott D. Gray and/or Plaintiff to serve as successor trustee to BJG thereunder, and does not mention or otherwise provide any possibility for CGIII to serve as successor trustee of the 1985 CLG Trust.

37.     The 1985 CLG Trust is valid, in effect, and has never been amended.

38.     On October 1, 2018, CGIII filed a Third Amended Inventory in the Estate Proceeding, declaring the value of the CLG Estate, as of the death of CLG on April 26, 2017, to be

14

$195,172.45, including $161,800.20 declared by CGIII to be attributable to the Phoenix and Penn Mutual life insurance policies.

39.     On October 16, 2018, with the assistance of Holmes and other individuals at McLane Middleton, P.A. ("McLane"), CGIII, in his capacity as trustee of the 1996 CLG Trust, transferred $165,584.22 from the assets of the 1996 CLG Trust to a McLane firm trust account, held in the name of CGIII (the "10/16/18 Transfer"). The transfer of these assets from the 1996 CLG Trust is confirmed on a McLane Trust Transaction Report dated November 29, 2018.

40.     CGIII transferred the assets of the 1996 CLG Trust in the 10/16/18 Transfer for the personal benefit of CGIII.

41.     CGIII transferred the assets of the 1996 CLG Trust in the 10/16/18 Transfer in bad faith, in disregard of the terms and purposes of the 1996 CLG Trust and the interests of the beneficiaries of the 1996 CLG Trust, including Plaintiff, and in breach of CGIII's fiduciary duties to the beneficiaries of the 1996 CLG Trust, including the duties of loyalty and impartiality.

42.     Holmes and other individuals at McLane induced and assisted CGIII with the transfer of the assets of the 1996 CLG Trust in the 10/16/18 Transfer with the knowledge that CGIII breached his fiduciary duties to the beneficiaries of the 1996 CLG Trust by making the 10/16/18 Transfer, including with the knowledge that (i) CGIII transferred such assets for the personal benefit of CGIII, (ii) CGIII transferred such assets in bad faith, (iii) CGIII transferred such assets in disregard of the terms and purposes of the 1996 CLG Trust, (iv) CGIII transferred such assets in disregard of the interests of the beneficiaries of the CLG Trust, including Plaintiff, and (iv) CGIII transferred such assets in breach of CGIII's fiduciary duties to the beneficiaries of the 1996 CLG Trust, including the duties of loyalty and impartiality.

43.     At the time that CGIII transferred the 1996 CLG Trust assets in the 10/16/18 Transfer on October 16, 2018, CGIII did not disclose such transfer to Plaintiff, and CGIII willfully concealed such transfer from Plaintiff.

44.     Upon information and belief, CGIII and Holmes deliberately planned to execute, and executed, the 10/16/18 Transfer on October 16, 2018, because Plaintiff was scheduled to take, and took, the deposition of CGIII in the Estate Proceeding on October 15, 2018. CGIII and Holmes planned the timing the 10/16/18 Transfer in order to avoid discovery of it by Plaintiff during the deposition of CGIII on October 15, 2018.

45.     CGIII willfully concealed the existence of the 10/16/18 Transfer from Plaintiff until the middle of a hearing in the Estate Proceeding on December 3, 2018. When CGIII filed his proposed First Account of the CLG Estate on December 14, 2018 (which account was subsequently "disallowed" by the Estate Probate Court), CGIII declared "Total Receipts" of $220,467.23, "Total Disbursements (expenses)" of $145,002.74 (including $76,000 in attorney's fees, of which more than $60,000 was paid to McLane), and a "Balance Held by Executor" of $75,464.49, for the period through November 29, 2018. Accordingly, the amount remaining in the CLG Estate bank account as of November 29, 2018, was less than half of the life insurance proceeds of the Phoenix and Penn Mutual policies that CGIII had converted and deposited in the CLG Estate bank account in August 2017.

46.     On January 18, 2019, Holmes submitted to this Court (Magistrate Judge Johnstone) a list of "Estate/Trust of Chester L. Gray, Jr. Assets of Pending and Upcoming Expenses" that included the following entry: "McLane Trust (Life Insurance) $165,584." This was the first direct confirmation of Holmes's misrepresentation as "Life Insurance" the amount in the McLane trust account that was the subject of the 10/16/18 Transfer.

16

47.     In fact, the life insurance proceeds from the Phoenix and Penn Mutual policies were converted by CGIII and deposited in the bank account of the CLG Estate in August 2017. Since that time, and through November 29, 2019, CGIII spent more than $190,000 from the CLG Estate bank account. The life insurance proceeds that CGIII converted were spent, primarily on McLane fees; they are not in the McLane trust account. The money in the McLane trust account constitutes assets of the 1996 CLG Trust that were transferred by CGIII in the 10/16/18 Transfer, without any legal authority, whether under the 1996 CLG Trust or otherwise.

48.     By the 10/16/18 Transfer, CGIII has attempted to steal and convert the amount of life insurance proceeds from the Phoenix and Penn Mutual policies twice -- first the life insurance proceeds themselves, which CGIII misappropriated from the 1985 CLG Trust successor trustee(s) and used to pay attorney's fees to Holmes and McLane for CGIII's personal benefit, and second, the amount transferred from the 1996 CLG Trust in the 10/16/18 Transfer, which amount has been misappropriated by CGIII from the remainder distributees of the 1996 CLG Trust, including Plaintiff.

49.     As a result of CGIII's violations of fiduciary duties owed by CGIII to Plaintiff with respect to the 1996 CLG Trust assets transferred to the McLane trust account in the 10/16/18 Transfer, Plaintiff, as a qualified beneficiary and remainder distributee of the 1996 CLG Trust, is entitled to remedies pursuant to RSA 564-B:10-1001 and RSA 564-B:10-1002, including without limitation the imposition of a constructive turst on, and the restoration to the 1996 CLG Trust of, the funds transferred by CGIII to the McLane trust account in the 10/16/18 Transfer.

50.     In an Order dated March 5, 2021 (amended in other parts upon reconsideration by Order dated June 15, 2021), the Estate Probate Court revoked CGIII's appointment as executor of the CLG Estate, disallowed more than 60% of the fees that CGIII had

paid to McLane in the first account period of the CLG Estate, and ruled as follows with respect to

the CGIII's taking of the Phoenix and Penn Mutual life insurance proceeds:

      a. "[T]here is no credible evidence that the 'Revocable Trust Agreement:
Chester L. Gray, Jr., Settlor; Barbara J. Gray, Trustee; Dated: November 13, 1985' . . . was ever
revoked by Chester L. Gray, Jr. As such, for purposes of this order only, the Court finds that the
rightful recipient of the proceeds from the insurance policies was the trustee of the Revocable
Trust Agreement: Chester L. Gray, Jr., Settlor; Barbara J. Gray, Trustee; Dated: November 13,
1985."

      b. "Notwithstanding the above, it is undisputed that CLGIII took steps to
secure the proceeds from each of the insurance policies as executor of his father's estate and
once received deposited those funds into the account that he had opened for the estate. The
proceeds were then used to pay administrative expenses of the estate, in spite of the fact that
[CGIII] was aware that the 1985 Trust was the beneficiary of both policies."

      c. "Through the objections by EWG to each of the proposed inventories
the executor and his attorneys were repeatedly advised of his position that the insurance proceeds
were not part of the estate. Nevertheless they inexpli[cab]ly continued to list the proceeds as
assets of the estate."

      d. "The Court finds that had the executor been more forthcoming
regarding the beneficiary of the insurance proceeds and had not opted to deposit those
funds in the estate account and then spent them on administrative costs of the estate,
hours of time consumed in the litigation of the numerous inventories would not have
been necessary."

      e. "[M]ost, if not all of this litigation could have been avoided if the
executor had chosen to be more forthcoming with information requested by his brother and more
cooperative in his effort to resolve some of the more persistent issues."

      f. "A significant portion of the fees stem from the executor's inability
and/or unwillingness to provide information to EWG in a timely manner as well as the
executor's failure to search for, discover and procure significant documents related to pending
issues such as the disposition of personal property."

      51.    Pursuant to Paragraph 4.8 of 1996 CLG Trust instrument, as amended in

February 2011, upon request by Plaintiff to Defendant, Plaintiff is entitled to receive, and the

Defendant, as Trustee of the 1996 CLG Trust, is obligated to render, an annual account of the

Trustee's administration of the 1996 CLG Trust.

52.     Pursuant to RSA 564:B:8-813, Defendant is obligated to keep the Plaintiff reasonably informed about Defendant's administration of the 1996 CLG Trust, including without limitation of the material facts necessary for Plaintiff to protect Plaintiff's interests.

53.     Pursuant to RSA 564:B:8-813(d), Defendant is obligated to send Plaintiff "a report at least annually" that "shall include a report of the trust property, liabilities, receipts, and disbursements, including the source and amount of the trustee's compensation, a listing of the trust assets, and, if feasible, their respective market values" (an "Annual Account").

54.     Pursuant to New Hampshire Circuit Court Probate Division Rule 108, each Annual Account by a trustee must conform to the fiduciary standards for trustee accounts set forth therein.

55.     On or about September 11, 2018, Plaintiff received from CGIII the first Annual Account for the 1996 CLG Trust, covering the period May 18, 2017, through May 17, 2018 (the "First Annual Account"). The First Annual Account included the 1996 CLG Trust assets that subsequently were the subject of the 10/16/18 Transfer.

56.     By letter dated April 22, 2019, Plaintiff requested CGIII to provide to Plaintiff by May 17, 2019, the second annual account for the 1996 CLG Trust, pursuant to Paragraph 4.8 of 1996 CLG Trust instrument, as amended in February 2011, and RSA 564:B:8-813(d).

57.     On or about August 5, 2019, Plaintiff received from CGIII's counsel the second Annual Account for the 1996 CLG Trust, covering the period May 18, 2018, through May 31, 2019 (the "Second Annual Account"). The Second Annual Account records the 10/16/18 Transfer in a schedule entitled "Other Payments from Principal," including a misrepresentation that the 10/16/18 Transfer involved "Life Insurance Proceeds."

58.     By letter dated October 23, 2019, Plaintiff objected to the Second Annual Account.

59.     During the period covered by the Second Annual Account, CGIII had fiduciary duties, including fiduciary duties of loyalty, fairness, impartiality, and prudence, which required CGIII to manage and invest the property of the 1996 CLG Trust in good faith, in accordance with the terms of the 1996 CLG Trust, in accordance with the intent of CLG as settlor of the 1996 CLG Trust, and in a reasonably productive manner that fairly reflected the interests of all beneficiaries of the trust, including the interests of Plaintiff as a qualified beneficiary and distributee of the 1996 CLG Trust.

60.     During the period covered by the Second Annual Account, and contrary to his fiduciary duties, the terms of the 1996 CLG Trust and the intent of CLG as settlor of the 1996 CLG Trust, CGIII managed and invested the property of the CLG Trust for his own benefit, imprudently, in bad faith, and in disregard, and to the detriment, of the interests of Plaintiff as a qualified beneficiary and distributee of the CLG Trust.

61.     For example, during the period covered by the Second Annual Account, rather than diversifying the investments of the trust in a manner that fairly reflected the interests of Plaintiff, that was reasonably productive, and that conformed with the terms of the 1996 CLG Trust and the intent of CLG as settlor of the 1996 CLG Trust, CGIII maintained a substantial part of the property of the 1996 CLG Trust in cash or cash equivalents, in breach of CGIII's fiduciary duties, and CGIII otherwise invested trust assets imprudently in a manner that violated the intent of CLG as settlor of the 1996 CLG Trust.

62.     During the period covered by the Second Annual Account, CGIII in bad faith paid from the assets of the 1996 CLG Trust expenses for his own personal benefit, expenses

in unreasonable amounts, and expenses for unnecessary and imprudent purposes, including for the benefit of the CLG Estate rather than for the benefit of the 1996 CLG Trust and the beneficiaries of the 1996 CLG Trust.

63.    During the period covered by the Second Annual Account, CGIII commingled property of the 1996 CLG Trust and property of the CLG Estate.

**COUNT I**
**(Breach of Fiduciary Duties; Breach of Trust; Imposition of Constructive Trust)**

64.    Plaintiff repeats and realleges each allegation contained in Paragraphs 1 through 63 above with the same force and effect as if set forth here in full.

65.    By making the 10/16/18 Transfer, Defendant breached his fiduciary duties to administer and manage the 1996 CLG Trust in good faith, in accordance with the terms and purposes of the 1996 CLG Trust, in accordance with the interests of the beneficiaries of the 1996 CLG Trust, and his fiduciary duties of loyalty, impartiality and fairness, in violation of RSA 564-B:8-801, RSA 564-B:8-802 and RSA 564-B:8-803.

66.    By making the 10/16/18 Transfer, Defendant's acts in breach of his fiduciary duties were wanton, malicious and/or oppressive.

67.    As a result of the breaches of fiduciary duty by Defendant, Plaintiff is entitled to remedies, pursuant to RSA 564-B:10-1001(b), including, without limitation, an order (i) compelling CGIII to restore to the Merrill Lynch brokerage account of the 1996 CLG Trust the $165,584.22 of 1996 CLG Trust assets presently held in the McLane trust account that were the subject of the 10/16/18 Transfer, plus an additional amount for the 1996 CLG Trust's loss of productive use of such amount since October 16, 2018; (ii) voiding the 10/16/18 Transfer, and/or (iii) imposing a constructive trust on the $165,584.22 of 1996 CLG Trust assets presently held in

the McLane trust account that were the subject of the 10/16/18 Transfer of 1996 CLG Trust assets
to the McLane trust account.

68.    Alternatively, as a result of the breaches of fiduciary duty by Defendant,
and pursuant to RSA 564-B:10-1001(b)(3) and RSA 564-B:10-1002, CGIII is subject to surcharge
personally and individually for the $165,584.22 of 1996 CLG Trust assets that were the subject of
the 10/16/18 Transfer, and CGIII is liable personally and individually to restore and pay
$165,584.22, plus interest, lost income and lost profit thereon, and enhanced compensatory
damages, to the 1996 CLG Trust.

## COUNT II
### (Breach of Fiduciary Duties; Breach of Trust; Settlement of Accounts)

69.    Plaintiff repeats and realleges each allegation contained in Paragraphs 1
through 68 above with the same force and effect as if set forth here in full.

70.    Defendant breached his duty to keep the Plaintiff reasonably informed
about Defendant's administration of the 1996 CLG Trust with respect to the period covered y the
Second Annual Account, in violation of RSA 564:B:8-813.

71.    Defendant has breached his duties to render to Plaintiff a complete and
accurate Second Annual Account of Defendant's administration of the 1996 CLG Trust, in
violation of RSA 564:B:8-813(d) and Paragraph 4.8 of the 1996 CLG Trust instrument, as
amended in February 2011, and New Hampshire Circuit Court Probate Division Rule 108.

72.    As indicated by the Second Annual Account, Defendant has breached his
fiduciary duties to Plaintiff to administer, invest and manage the trust and distribute the trust
property in good faith, in accordance with its terms and purposes and interests of the beneficiaries,
and in accordance with the New Hampshire Trust Code, in violation of RSA 564:B:8-801.

22

73.     As indicated by the Second Annual Account, Defendant has breached his fiduciary duties to Plaintiff of loyalty, impartiality, fairness and prudence (including the duty of prudent administration), in violation of RSA 564-B:8-801, RSA564-B:8-802, RSA 564-B:8-803, and RSA 564-B:8-804.

74.     As indicated by the Second Annual Account, Defendant has breached his fiduciary duties to Plaintiff to incur costs of trust administration that are reasonable in relation to the trust property, the purposes of the trust, and the skills of the trustee, in violation of RSA 564-B:8-805.

75.     As indicated by the Second Annual Account, Defendant has breached his fiduciary duties to Plaintiff by (i) making discretionary distributions of either principal or income for the benefit of Defendant that were not made to provide for Defendant's health, education, maintenance or support, and (ii) making discretionary allocations of receipts and expenses as between principal and income that have enlarged Defendant's personal beneficial interests under and in the 1996 CLG Trust and diminished Plaintiff's beneficial interests under and in the 1996 CLG Trust, in violation of RSA 564-A:3.IV.

76.     Pursuant to RSA 564-B:8-802(b), Plaintiff is entitled to void all transactions involving the investment or management of the property of the 1996 CLG Trust covered by the Second Annual Account that were affected by a conflict between Defendant's fiduciary and personal interests in the 1996 CLG Trust.

77.     As a result of Defendant's breaches of his fiduciary duties owed to Plaintiff with respect to the 1996 CLG Trust during the period covered by the Second Annual Account, Plaintiff has been damaged in an amount to be determined at trial.

23

78.     Pursuant to RSA 564-B:10-1001 and RSA 564-B:10-1002, Plaintiff is entitled to remedies, including the payment of money, the restoration of property, and the payment of damages, as a result of Defendant's breaches of his fiduciary duties owed to Plaintiff with respect to the 1996 CLG Trust during the period covered by the Second Annual Account.

79.     CGIII is subject to surcharge personally and individually for all monetary damages to the 1996 CLG Trust resulting from Defendant's breaches of his fiduciary duties owed to Plaintiff with respect to the 1996 CLG Trust during the period covered by the Second Annual Account.

### DEMAND FOR RELIEF

WHEREFORE, Plaintiff Evan W. Gray demands judgment against Defendant Chester L. Gray III:

(i)     awarding Plaintiff monetary damages in an amount to be determined at trial, and/or alternatively compelling Defendant Chester L. Gray III to restore property to the 1996 CLG Trust in an amount to be determined at trial;

(ii)    compelling Defendant Chester L. Gray III to restore to the Merrill Lynch brokerage account of the 1996 CLG Trust the $165,584.22 of 1996 CLG Trust assets presently held in the McLane Middleton P.A. trust account, plus interest, lost income and lost profits thereon and enhanced compensatory damages, and/or alternatively imposing a constructive trust on the $165,584.22 of 1996 CLG Trust assets presently held in the McLane Middleton P.A. trust account;

(iii)   surcharging Defendant Chester L. Gray III personally and individually for all monetary damages awarded to Plaintiff and/or property to be restored to the 1996 CLG Trust;

(iv)     voiding all transactions involving the investment or management of the property of the 1996 CLG Trust indicated in the Second Annual Account that were affected by a conflict between Defendant Chester L. Gray III's fiduciary and personal interests in the 1996 CLG Trust, including without limitation voiding the October 16, 2018, transfer by Defendant Chester L. Gray III of $165,584.22 of 1996 CLG Trust assets to the McLane Middleton P.A. trust account;

(v)     directing Defendant Chester L. Gray III to correct and complete the Second Annual Account in order accurately and completely to reflect the property, liabilities, receipts and disbursements of the 1996 CLG Trust, and to allocate principal and income in a manner that does not enlarge Defendant Chester L. Gray III's beneficial interest in the 1996 CLG Trust and diminish Plaintiff's beneficial interest in the 1996 CLG Trust;

(vi)     for applicable monetary interest on Plaintiff's claims;

(vii)     for Plaintiff's costs incurred in connection with this action, including attorney's fees and expenses; and

(viii)     for such other equitable remedies or legal relief as this Court deems just and proper.

Dated: June 12, 2023

Plaintiff Evan W. Gray, *pro se*

369 Lexington Avenue, Suite 211
New York, New York 10017
(646) 556-6638

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below, I served this pleading by mailing a copy thereof by first-class mail in postpaid envelopes that I deposited in an official depository under the exclusive care and custody of the United States Postal Service, addressed to the attorneys for defendant Chester L. Gray III at the addresses designated by them for such purpose, and at which they maintain offices, as follows:

> Benjamin T. Siracusa Hillman, Esq.
> Shaheen & Gordon, P.A.
> P.O. Box 2703
> Concord, NH 03302

Dated:  June 12, 2023

Evan W. Gray