UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Evan Gray

      v.

Chester L. Gray, III, Trustee

Civil No. 22-cv-560-LM
Opinion No. 2023 DNH 146 P

**O R D E R**

Evan Gray ("Evan") brings this action alleging that his brother, Chester L. Gray, III ("Skip"), violated his fiduciary duties as the trustee of a trust established by their father.[1] Presently before the court is Skip's motion to dismiss Evan's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). See doc. no. 30. Skip contends that Evan's claims are untimely pursuant to RSA 564-B:10-1005. Evan objects, arguing, inter alia, that his claims are timely under New Hampshire's savings statute, RSA 508:10. For the following reasons, the court denies the motion to dismiss.[2]

**STANDARD OF REVIEW**

When evaluating a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's

---

[1] The court refers to the parties by their first names because they share a last name in common.

[2] Although Skip requested a hearing, the court does not believe oral argument is needed.

favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 68, 71 (1st Cir. 2014) (quotation omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). At the motion to dismiss stage, the court "ordinarily may only consider facts alleged in the complaint and exhibits attached thereto, although [the court] may also consider materials fairly incorporated in the complaint or subject to judicial notice." Lowe v. Mills, 68 F.4th 706, 713-14 (1st Cir. 2023) (citation and quotations omitted).

"Although a Rule 12(b)(6) analysis ordinarily tests the sufficiency of a plaintiff's complaint, 'it is sometimes permissible to grant a motion to dismiss based on an affirmative defense, such as the statute of limitations.'" Fujifilm N. Am. Corp. v. M&R Printing Equip., Inc., 565 F. Supp. 3d 222, 237 (D.N.H. 2021) (quoting Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005)). "A motion to dismiss based upon a statute-of-limitations defense may be granted 'when the pleader's allegations leave no doubt that an asserted claim is time-barred.'" Id. (quoting Centro Medico, 406 F.3d at 6).

## BACKGROUND

I.   Factual Background

The following facts are taken from Evan's amended complaint (doc. no. 27). Evan and Skip are sons of Barbara and Chester Gray, Jr., both of whom are now

deceased. During his lifetime, Chester established trusts for the management of his property, two of which are at issue in the present dispute. Of the two at-issue trusts, one was established in 1996 ("the 1996 trust") and the other was established in 1985 ("the 1985 trust").

Chester died in 2017. Upon his father's death, Skip began acting as executor of Chester's estate and as trustee to the 1996 trust. Skip commenced an estate proceeding to probate Chester's assets on or about May 24, 2017. In his initial petition, Skip did not disclose the existence of any life insurance policies among the estate's assets. On or about that same day, Evan, as a beneficiary of the 1996 trust, requested that Skip identify the beneficiaries of two of Chester's life insurance policies that Skip had previously disclosed to Evan, one of which was with Penn Mutual, and the other was with Phoenix.

Having not received a response to his request by October 2017, Evan submitted a petition for full administration of Chester's estate in the estate proceeding. As a result of the discovery process in that proceeding, Evan obtained several documents from Skip pertaining to the Penn Mutual and Phoenix policies. Among these documents were letters from Penn Mutual and Phoenix to Skip—received shortly after the filing of the initial estate petition—identifying the beneficiaries of the life insurance policies as the trustee and successor trustees to the 1985 trust, and identifying Barbara as the trustee of the 1985 trust. Evan alleges that Skip failed to make a diligent search for the 1985 trust instrument, and

that, in any event, Skip knew or should have known that he was not the successor trustee under that trust.

Despite Skip's alleged knowledge, after receiving the letters from Penn Mutual and Phoenix, Skip informed those insurance companies in July 2017 that he had made a diligent search for the 1985 trust instrument but was unable to find it. Then, in August 2017, and because of Skip's representation, Penn Mutual and Phoenix disbursed approximately $165,000 under the policies to Skip, who in turn deposited the monies into the bank account for Chester's estate. On October 16, 2018, Skip transferred the monies again to a separate account held by Skip's lawyers.[3]

Upon learning the foregoing information, Evan obtained a copy of the 1985 trust instrument. The 1985 trust documents identify Chester's life insurance policies as the trust's primary assets, and expressly state that the executor of Chester's estate "shall not" receive any amounts payable under the policies. Doc. no. 27 ¶ 35. The documents also provide that Evan or his other brother, Scott Gray, would succeed their mother Barbara as trustee to the 1985 trust.

II.   <u>Procedural History</u>

In June 2018, Evan, proceeding pro se,[4] brought suit in federal court against Skip, alleging claims related to Skip's actions as trustee of their parents' trusts and as executor of their father's estate. See <u>Gray v. Gray</u>, 18-cv-522-JL, 2023 WL 35244,

---

[3] Skip is represented by different counsel in the instant proceeding.

[4] Evan is an attorney.

at *1 & passim (D.N.H. Jan. 4, 2023). Skip brought counterclaims against Evan and Scott. The court resolved the claims and counterclaims in that case, largely in Skip's favor, and entered judgment on January 5, 2023. The court denied Evan's motion for reconsideration, and Evan has appealed.

While that case was pending, Evan, again proceeding pro se, brought a second suit in this court against Skip in his capacity as trustee of the 1996 trust. See Gray v. Gray, 20-cv-802-JL (D.N.H July 27, 2020) ("2020 Suit"). Evan alleged in that complaint, among other things, that, in October 2018, Skip breached his fiduciary duties as trustee when he transferred approximately $165,000 to his lawyer's bank account. 2020 Suit, doc. no. 1 ¶ 45. Evan alleged three claims against Skip for breach of trust and breach of fiduciary duties, and sought compensatory and punitive damages, an order requiring Skip to restore the October 2018 transfer to the trust, and a surcharge against Skip, individually.

Almost two years later, Evan filed a motion for voluntary dismissal in the 2020 Suit. The court granted the motion on July 8, 2022.

On or about June 8, 2022, Evan filed a petition in the 9th Circuit Court, Probate Division, Hillsborough County, New Hampshire ("Probate Court"), alleging that Skip had breached his fiduciary duties as trustee of the 1996 trust,[5] and filed a second petition in the same court on or about November 14, 2022, alleging breach of

---

[5] Technically, Evan filed this petition in the Probate Court a few days before he filed his motion for voluntary dismissal of the 2020 Suit, and a month before the court granted that motion. Neither party ascribes any significance to this sequencing of events.

fiduciary duties in administration of the trust. The Probate Court consolidated the petitions, and Skip removed the consolidated petitions to this court. Skip's removal of those consolidated petitions forms the basis for the instant proceeding before this court. See doc. no. 1.

Evan moved to remand. The court remanded the June 2022 petition to the Probate Court due to a lack of diversity jurisdiction. However, the court denied the motion as to the November 2022 petition, which alleged the same claims Evan brought in the 2020 Suit.

In his amended complaint here, Evan brings two counts. In Count I of the amended complaint, Evan alleges that Skip violated his fiduciary duties as trustee of the 1996 trust by transferring the monies disbursed under the life insurance policies to his lawyer's bank account. Evan effectively contends that, by making this transfer in October 2018, Skip stole the proceeds from the Penn Mutual and Phoenix life insurance policies to use for his own benefit. In Count II of the amended complaint, Evan alleges that Skip violated his fiduciary duties by taking (or by failing to take) certain actions with respect to the 1996 trust during the trust's "Second Annual Accounting" period—May 18, 2018 through May 31, 2019— which was the time period during which Skip made the at-issue transfer.

## DISCUSSION

Skip now moves to dismiss both counts in the amended complaint on the ground that they are untimely under RSA 564-B:10-1005(a), the statute of limitations for actions brought by beneficiaries against trustees under the New

Hampshire Trust Code. Skip contends that RSA 564-B:10-1005(a) sets forth a one-year statute of limitations, and that the instant proceeding (which relates to actions taking place in 2018 and 2019) was commenced in 2022, well outside the limitations period.

Evan objects, arguing, inter alia, that his claims are timely pursuant to RSA 508:10, New Hampshire's savings statute. Evan argues that the 2020 Suit—which Skip does not allege was untimely—was voluntarily nonsuited in July 2022, and RSA 508:10 provided Evan with a year from that case's nonsuit to refile his claims. Skip replies that RSA 508:10 is a tolling statute, and a provision of RSA 564-B:10-1005 specifically states that the limitations period set forth in subparagraph (a) of that statute cannot be tolled except in circumstances not present here.

The parties' arguments require the court to engage in statutory interpretation. Federal courts sitting in diversity "look to the pronouncements of a state's highest court in order to discern the contours of that state's law." Hosp. San Antonio, Inc. v. Oquendo-Lorenzo, 47 F.4th 1, 7 (1st Cir. 2022) (quoting González Figueroa v. J.C. Penney P.R., Inc., 568 F.3d 313, 318 (1st Cir. 2009)). Here, the New Hampshire Supreme Court has not ruled on the precise issue presented. Therefore, the court "must anticipate how the [New Hampshire Supreme Court] would rule if it were deciding the questions presented." Id. This inquiry requires the court to "look to the 'pertinent statutory language and analogous decisions of the [New Hampshire] Supreme Court.'" Id. (quoting González Figueroa, 568 F.3d at 318).

The parties do not dispute that RSA 564-B:10-1005(a) sets forth the limitations period applicable to the instant suit. That statute provides:

> A beneficiary may not commence a proceeding against a trustee for breach of trust more than one year after the date the beneficiary or a representative of the beneficiary was sent a report that adequately disclosed the existence of a potential claim for breach of trust and informed the beneficiary of the time allowed for commencing a proceeding.

RSA 564-B:10-1005(a). It does not appear that the New Hampshire Supreme Court has had occasion to interpret RSA 564-B:10-1005(a). Cf. In re Theresa Houlahan Tr., 166 N.H. 593, 596-98 (2014) (interpreting other provisions of RSA 564-B:10-1005); Billewicz v. Ransmeier, 161 N.H. 145, 149, 151-53 (2010) (same). However, the Court has noted in other contexts that "[o]ne of the primary purposes of . . . statute[s] of limitations 'is to provide timely notice to the defendant to enable him to preserve and collect his evidence.'" Brady v. Duran, 119 N.H. 467, 469 (1979) (quoting W. Ferguson, The Statutes of Limitations Saving Statutes, 80 (1978)).

Skip contends that, because Evan filed the instant claims in the Probate Court in 2022, which was more than one year after Evan was adequately notified of the existence of those claims and informed of the one-year limitations period, Evan's claims are time-barred under RSA 564-B:10-1005(a). Evan does not appear to dispute that he filed the instant suit outside the limitations period set forth in RSA 564-B:10-1005(a). He argues, however, that the instant proceeding was timely filed pursuant to the savings statute, RSA 508:10. That statute, entitled "Second Suit," provides:

> If judgment is rendered against the plaintiff in an action brought within the time limited therefor, or upon a writ of error thereon, and the right of action is not barred by the judgment, a new action may be brought thereon in one year after the judgment.

RSA 508:10. Because Evan filed the instant petition in the Probate Court in November 2022, which was within one year of his voluntary dismissal of the 2020 Suit, and because the claims and parties in the instant petition are the same as those in the 2020 Suit, Evan contends that this suit is permitted by RSA 508:10.

In contrast to RSA 564-B:10-1005(a), the New Hampshire Supreme Court has had numerous occasions to interpret RSA 508:10.[6] See, e.g., Roberts v. Gen. Motors Corp., 140 N.H. 723, 725 (1996). "The saving statute is 'designed to insure a diligent suitor the right to a hearing in court until he reaches a judgment on the merits.'" Id. (quoting Berg v. Kelley, 134 N.H. 255, 257 (1991)). The New Hampshire Supreme Court interprets the savings statute with reference to "[i]ts broad and liberal purpose," id., which "is not to be frittered away by any narrow construction," Berg, 134 N.H. at 257. See Doggett v. Town of N. Hampton Zoning Bd. of Adjustment, 138 N.H. 744, 747 (1994) ("[W]e have frequently stated that RSA 508:10 'is to be given a liberal interpretation.'" (quoting Rowe v. John Deere, 130 N.H. 18, 23 (1987))). When an action is brought within one year of the issuance of judgment for a prior action, the "sole test" of RSA 508:10's applicability "is whether the right of action is, or is not, barred by the first judgment." Roberts, 140 N.H. at 725 (quotation

---

[6] The New Hampshire Supreme Court has traced the savings statute's history to "the early English statute of limitations, enacted in 1623." Hughes v. Hebert, 106 N.H. 176, 177 (1965); see Milford Quarry & Constr. Co. v. Bos. & Me. R.R., 78 N.H. 176 (1916).

omitted); see also, e.g., Barton v. Barton, 125 N.H. 433, 434-35 (1984) (analyzing whether suit was permitted under RSA 508:10 by determining whether judgment in prior suit was a judgment on the merits).

Skip replies to Evan's reliance upon the savings statute by highlighting RSA 564-B:10-1005(d), which states that "[t]he periods of limitation under this section shall not be tolled for any reason, except by a written agreement of the trustees and qualified beneficiaries or a court order." Characterizing RSA 508:10 as a tolling provision, Skip contends that that statute cannot toll the limitations period in RSA 564-B:10-1005(a) given the clear command of RSA 564-B:10-1005(d).

The court agrees that the plain text of RSA 564-B:10-1005(d) provides that the limitations period in RSA 564-B:10-1005(a) may not be tolled absent an agreement between the trustee and beneficiaries or by court order. The issue in this case is whether application of RSA 508:10 would impermissibly "toll" the statute of limitations, or whether its application would have some other effect. In other words, the court must determine whether application of RSA 508:10 to the statute of limitations in this case would result in the limitations period being "tolled" as that word is used in RSA 564-B:10-1005(d).

This is a question of statutory interpretation. When interpreting statutes, the New Hampshire Supreme Court begins with the statutory language, and construes "that language according to its plain and ordinary meaning." Brady v. Sumski, --- N.H. ---, 2023 WL 5281156, at *2 (2023). The Court will "interpret the statute as written and will not consider what the legislature might have said or add language

10

that the legislature did not see fit to include." <u>Id.</u> Furthermore, the Court will "interpret the words of the statute considered as a whole," mindful that statutes must be interpreted "in the context of the overall statutory scheme and not in isolation." <u>Id.</u>

The plain meaning of "toll" in this context is "to stop the running of; to abate." <u>Black's Law Dictionary</u> (11th ed. 2019). "Ordinarily, 'tolled,' in the context of a time prescription . . . means that the limitations period is suspended (stops running) . . . then starts running again when the tolling period ends, picking up where it left off." <u>Artis v. District of Columbia,</u> 583 U.S. 71, 80 (2018). New Hampshire has numerous tolling rules which operate to suspend statutes of limitations. For example, the fraudulent concealment rule provides that, when the facts essential to the plaintiff's cause of action are fraudulently concealed, the applicable statute of limitations does not begin to run—i.e., "is tolled"—until such time that the plaintiff could have discovered the fraudulently concealed facts through the exercise of reasonable diligence. <u>Bricker v. Putnam,</u> 128 N.H. 162, 165 (1986). Another tolling rule, the discovery rule, "tolls the limitations period until a plaintiff discovers, or should reasonably have discovered, the causal connection between the [plaintiff's] harm and the defendant's negligent or wrongful act." <u>Troy v. Bishop Guertin High Sch.,</u> --- N.H. ---, 2023 WL 5111298, at *4 (2023). Under the discovery rule, the plaintiff must reasonably be able to ascertain both her injury and its cause "before the statute of limitations begins to run." <u>Id.</u> at *3. Yet another tolling rule appears in RSA 606-A:1, New Hampshire's codification of the Interstate Agreement on

Detainers. See State v. Brown, 157 N.H. 555, 557-58 (2008). That statute provides that a 180-day mandatory time limit for bringing a defendant to trial "shall be tolled whenever and for as long as the prisoner is unable to stand trial." RSA 606-A:1, art. VI(a). This operates to pause the running of the 180-day limit so long as the defendant cannot be brought to trial. See Brown, 157 N.H. at 558-66 (conducting a detailed analysis of precise time periods in which the defendant was unable to be brought to trial, and determining on which days the 180-day limitations period was paused).

"In lieu of 'tolling' or 'suspending' a limitations period by pausing its progression, a legislature might elect simply to provide a grace period." Artis, 583 U.S. at 82. "When that mode is adopted, the statute of limitations continues to run . . . [b]ut the risk of a time bar is averted by according the plaintiff a fixed period in which to refile."[7] Id. Unlike tolling provisions, which suspend or pause the running of the applicable statute of limitations, a "grace period" provision does not stop the running of the applicable limitations period, but merely provides additional time beyond the applicable limitations period for the plaintiff to commence a proceeding if the plaintiff meets the grace period provision's requirements. See id.

---

[7] In Artis, the United States Supreme Court implicitly characterized RSA 508:10 as one such "grace period" provision. See 583 U.S. at 82 (citing appendix to amicus brief for National Conference of State Legislatures et al. as providing list of states which have enacted "grace period" provisions); Brief for Nat'l Conf. of State Legislatures et al. as Amici Curiae Supporting Respondent, at *17a, Artis v. District of Columbia, 583 U.S. 71 (2018) (No. 16-460), 2017 WL 3588731 (listing RSA 508:10).

So understood, RSA 564-B:10-1005(d) prohibits the limitations periods set forth in that statute from being paused or suspended absent an agreement between the trustee and beneficiaries or a court order. However, its prohibition on tolling does not prohibit the application of "grace period" provisions, i.e., provisions which do not stop its limitations periods from running. The question then becomes whether RSA 508:10 stops the running of statutes of limitations or whether it provides a grace period to refile after a limitations period has run.

Looking to the plain language of RSA 508:10, the savings statute provides that "a new action may be brought" within one year of a judgment so long as the original action was "brought within the time limited therefor, or upon a writ of error thereon," and so long as the second action "is not barred by the judgment." RSA 508:10 does not state that the applicable statute of limitations is tolled, suspended, or paused during the pendency of the initial suit or for a year after the entry of judgment on that suit. Rather, it simply states that a plaintiff may file a new action within a year of judgment so long as the initial action was timely brought, and the new action is not otherwise barred by the judgment.

The plain language of RSA 508:10 does not suggest that it operates to toll, pause, or suspend the running of statutes of limitations. See State v. Bakunczyk, 164 N.H. 77, 79 (2012). To the contrary, the statute's requirement that the first suit be "brought within the time limited therefor" contemplates that the first suit must be brought before the expiration of any applicable limitations period. To hold that RSA 508:10 stops the running of applicable limitations periods would require the

court to add language to the statute that the legislature did not see fit to include, which this court may not do. Polonsky v. Town of Bedford, 171 N.H. 89, 93 (2018).

Moreover, while it does not appear that the New Hampshire Supreme Court has had occasion to answer the precise question presented here, it has explained the savings statute's effect as though it provides a grace period in which to refile an action, not as though it tolls or suspends the applicable statute of limitations. The New Hampshire Supreme Court has often stated that "RSA 508:10 serves to permit an action to be brought after the [statute of] limitation[s] has run . . . ." Fastrack Crushing Servs., Inc. v. Abatement Int'l/Advatex Assocs., Inc., 153 N.H. 284, 288 (2006) (emphasis added; quotation omitted); accord Roberts, 140 N.H. at 725; Berg, 134 N.H. at 257; see also Town of Plaistow v. Riddle, 141 N.H. 307, 309 ("RSA 508:10 would serve, in the instant case, to allow the defendants to revive their ZBA appeal . . . after the limitations period has run . . . ."); Carson v. Maurer, 120 N.H. 925, 938 (1980) ("Even if the limitations period . . . has expired, the plaintiffs may still bring a new action if they do so within one year after the initial dismissal [pursuant to] RSA 508:10 . . . ."), overruled on other grounds by Cmty. Res. for Just., Inc. v. City of Manchester, 154 N.H. 748 (2007); MBC, Inc. v. Engel, 119 N.H. 8, 12 (1979) (explaining that RSA 508:10 allows for a second suit "after the statutory period has elapsed" and "even though the statute of limitations for the underlying cause of action has run"); Hughes v. Hebert, 106 N.H. 176, 178 (1965) ("Only where the cause has become barred by the general limitation does a plaintiff have occasion to rely upon RSA 508:10.").

Tolling provisions operate to pause or suspend the running of a limitations period; therefore, they must come into play, if at all, before the applicable limitations period has expired. Otherwise, there would be no time left on the limitations period to suspend. Since, as the New Hampshire Supreme Court has frequently stated, RSA 508:10 applies only <u>after</u> the expiration of the applicable limitations period, it cannot be a tolling provision. Instead, it is a grace period provision that allows for a second suit to be brought "after the statutory [limitations] period has elapsed." MBC, Inc., 119 N.H. at 12.

It is true that, on some occasions, the New Hampshire Supreme Court has also seemed to refer to RSA 508:10 as a tolling provision. Skip cites to <u>Doggett v. Town of North Hampton Zoning Board of Adjustment</u> as one such instance. In <u>Doggett</u>, the Court characterized RSA chapter 508 as being "largely made up of general statutes of limitations . . . along with some tolling provisions," and found that the purpose of one statute in that chapter, RSA 508:1, "is to make RSA chapter 508 the source for 'catch-all' statutes of limitations and tolling provisions." 138 N.H. at 747. In isolation, these statements would appear to support Skip's position. However, considered in context, <u>Doggett</u> is consistent with the body of New Hampshire jurisprudence characterizing RSA 508:10 as a grace period provision.

In <u>Doggett</u>, a property owner brought an appeal in superior court pursuant to RSA 677:4 after the Zoning Board of Adjustment for the Town of North Hampton

("the ZBA") ordered her building permit withdrawn.[8] Id. at 745. After five years passed with no action on the superior court docket, the court granted the ZBA's motion to dismiss for lack of prosecution. Id. The property owner then filed a second appeal in the superior court that was largely identical to her first appeal. Id. The ZBA again moved to dismiss, contending that RSA 508:10 did not apply to appeals brought under RSA 677:4. Id. The superior court once again granted the ZBA's motion, and the property owner appealed the dismissal of her second suit to the New Hampshire Supreme Court. See id.

The Supreme Court ultimately held that RSA 508:10 permitted the property owner's second appeal. See id. at 746-47. The Court's analysis largely focused on "the meaning of the word 'action' in RSA 508:10," and whether an appeal brought in superior court pursuant to RSA 677:4 constituted an "action" for purposes of the savings statute. Id. at 746; see RSA 508:10 (providing that "a new action may be brought" within one year of judgment). Reasoning that the "meaning of the word does not contemplate a distinction between zoning and other actions," and that nothing in the language of RSA 508:10 suggested that appeals brought under RSA 677:4 were excluded from the meaning of "action," the court concluded that the statute did not distinguish zoning actions from other actions. 138 N.H. at 746-47.

---

[8] At the time Doggett was decided, RSA 677:4 provided in pertinent part that "[a]ny person aggrieved by any order or decision of the zoning board of adjustment . . . may apply to the superior court within 30 days after the action complained of has been recorded."

The language from <u>Doggett</u> that Skip points to stems from the Supreme Court's discussion and rejection of the ZBA's argument "that RSA 508:1 renders RSA 508:10 inapplicable to an action . . . whose limitation period is not specified in RSA chapter 508." <u>Id.</u> at 747. RSA 508:1 states that "[t]he provisions of [RSA chapter 508] shall not apply to cases in which a different time is limited by statute." The Supreme Court construed RSA 508:1 to apply "only when the statutes being compared contain similar, potentially conflicting, types of time limits." 138 N.H. at 747. For example, the Court explained, where an action could potentially be governed by the general three-year limit on personal actions in RSA 508:4 and a shorter statute of limitations specific to a particular type of personal action, RSA 508:1 would apply and make the shorter, more specific statute of limitations controlling. <u>See id.</u> The Court then found no conflict between RSA 677:4 and RSA 508:10, because RSA 677:4 contains only a thirty-day limitations period for bringing an initial appeal to the superior court and "nothing akin to RSA 508:10's one-year limit for bringing a second suit." <u>Id.</u> at 747-48. "A person can thus obey both [statutes] without conflict, making resort to RSA 508:1 unnecessary." <u>Id.</u> at 748.

The New Hampshire Supreme Court's holding in <u>Doggett</u>—that RSA 508:10 applies to superior court actions brought under RSA 677:4—is consistent with that Court's jurisprudence regarding the nature of RSA 508:10. The Court did not hold that RSA 508:10 operates to toll the thirty-day limitations period set forth in RSA 677:4. Rather, the Court held only that the two statutes were not in conflict, because one can comply with RSA 677:4 by filing an appeal in superior court within

thirty days of an adverse ZBA decision while also bringing a second suit under RSA 508:10 if the initial appeal is resolved in a manner that is not preclusive.

Moreover, while the Doggett Court stated that RSA chapter 508 is "largely" comprised of general statutes of limitations "along with some tolling provisions," it did not state that the chapter is exclusively comprised of limitations periods and tolling provisions. 138 N.H. at 747 (emphasis added). Though the Court stated that RSA chapter 508 is "the source for 'catch-all' statutes of limitations and tolling provisions," id., that does not mean that every statute appearing in the chapter is either a statute of limitations or a tolling provision. Indeed, many statutes in that chapter are neither. See, e.g., RSA 508:12 (providing limited immunity from liability to persons who render aid at the scene of emergencies from claims arising from those persons' acts or omissions in rendering aid), :18 (providing limited immunity from liability for medical professionals from claims arising from medical procedures ordered by law enforcement).

However, and although Skip does not cite to it, this court recognizes that the New Hampshire Supreme Court stated almost sixty years ago that RSA 508:10 is a statutory provision "under which the running of general limitations may be tolled." Hughes, 106 N.H. at 177. This appears to be the only instance in which the New Hampshire Supreme Court has expressly characterized RSA 508:10 as a tolling provision. Despite this statement in Hughes, this court remains convinced that the New Hampshire Supreme Court would hold that RSA 564-B:10-1005(d)'s prohibition on tolling does not bar application of RSA 508:10 in this case.

In Hughes, the plaintiff brought a second personal injury action after his first was nonsuited. 106 N.H. at 176. The second proceeding was brought more than a year after the nonsuit was entered, but within the six-year statute of limitations. Id. at 177. The question on appeal was whether RSA 508:10 could operate to bar a second suit filed more than a year after entry of judgment even if the second suit was otherwise timely under the applicable statute of limitations. See id. The Court held that RSA 508:10 did not so operate. Id. In so doing, the Court emphasized—in a manner consistent with its jurisprudence in this area—that RSA 508:10 comes into play "[o]nly where the cause has become barred by the general limitation," and that "[t]he obvious purpose of [RSA 508:10] was . . . to permit an action to be brought after the general limitation had run." Id. at 177-78 (emphasis added). Given the Hughes Court's description of the legal effect of RSA 508:10, its offhanded characterization of the statute as a tolling provision does not disturb this court's conclusion. See Artis, 583 U.S. at 83 (applying plain meaning of tolling despite a prior case's "atypical use of 'tolling' . . . to mean something other than stopping the clock on a limitations period" and finding that the single, atypical case was "a feather on the scale against the weight of decisions in which 'tolling' a statute of limitations signals stopping the clock").

Skip further argues that the First Circuit has held that RSA 508:10 is a tolling provision. Not so. Skip points to the First Circuit's orders in two cases: Veale v. Keene Publishing Corp., 181 F.3d 81, 1999 WL 525941 (1st Cir. 1999) (table opinion) and Cote v. Vetter, 30 F.3d 126, 1994 WL 390152 (1st Cir. 1994) (table

opinion).[9] In <u>Veale</u>, the First Circuit stated that the plaintiff in that case did not

dispute that, to be timely, his complaint needed to be filed by March 2, 1998, but his

complaint was not filed until nine days later. <u>Veale, 1999 WL 525941</u>, at *1. "Thus,"

the First Circuit went on, "unless the limitations period was tolled, the [plaintiff's]

complaint was late." <u>Id.</u> Although the First Circuit remarked that, "[a]rguably,

[RSA] 508:10 may provide tolling in the instant situation," and characterized that

statute as providing a "tolling rule," the Court found that RSA 508:10 did not apply

because the plaintiff's second suit differed from his first. <u>Id.</u>

　　　　The statements in <u>Veale</u> characterizing RSA 508:10 as a tolling provision are

dicta because they were unnecessary to the court's conclusion, i.e., that the statute

did not apply because the plaintiff's second action was not the same as his first

action. See <u>Díaz-Rodríguez v. Pep Boys Corp., 410 F.3d 56, 60 (1st Cir. 2005)</u> (noting

that a statement is dicta when it is "unnecessary to the decision in the case"

(quoting <u>Black's Law Dictionary</u> (8th ed. 2004)). Additionally, in support of its

characterization of RSA 508:10 as a tolling provision, <u>Veale</u> cites only to the New

Hampshire Supreme Court's opinion in <u>Rowe v. John Deere, 130 N.H. 18 (1987)</u>. In

<u>Rowe</u>, this court certified two questions to the New Hampshire Supreme Court. <u>See</u>

<u>130 N.H. at 19-20</u>. The first question asked whether a statute of limitations is tolled

when the plaintiff sustains an injury notifying him that his rights have been

---

　　　　[9] First Circuit Rules 36(c) and 32.1.0(a) state that unpublished opinions have
"no precedential value." For what it is worth, the decisions are publicly available and
Skip has relied on them to argue in favor of his position. The court therefore addresses
Skip's argument about these cases on the merits.

violated even if the full extent of his injuries are not known at that time. Id. This question implicated the discovery rule, discussed above, not RSA 508:10. See id. at 21. The second certified question asked whether RSA 508:10 saved a second lawsuit "commenced within one year after summary judgment was rendered against the plaintiff in the original or first lawsuit when the plaintiff's second lawsuit is against a defendant with a similar name to the defendant in the first lawsuit." Id. at 20. In answering this question concerning RSA 508:10, the New Hampshire Supreme Court merely held that the savings statute applies only when brought against "the same defendant." Id. at 23-24. The Court's holding in Rowe does not suggest that 508:10 operates to pause applicable limitations periods. Given that the First Circuit's description of RSA 508:10 as a tolling provision in Veale was unnecessary to its ruling and the lack of strong support within Veale for its characterization of RSA 508:10, the court is not persuaded that Veale answers the question presented here.

Cote is even less helpful to Skip. As in Veale, the Circuit's characterization of RSA 508:10 as a tolling provision in Cote appears in dicta. See Cote, 1994 WL 390152, at *2 (noting that the court had "no occasion to decide whether RSA 508:10 or any other tolling provision would apply to stop the clock and defeat a potential statute of limitations defense"). Unlike Veale, however, Cote does not identify any support for the proposition that RSA 508:10 operates to pause or suspend a limitations period. To the contrary, the First Circuit's order in Cote recognizes that RSA 508:10 applies "[o]nly where the cause has become barred by the general

21

limitation." Id. at *1 (quoting Hughes, 106 N.H. at 178). "Thus, when a timely action is later dismissed 'for reasons not barring the right of action or determining it on its merits,' a new action, arising out of the same transaction or occurrence, may be brought within a year of the judgment, providing the general limitation period will or has run." Id. (emphasis added; citation omitted) (quoting Hughes, 106 N.H. at 178). Cote is therefore consonant with New Hampshire jurisprudence characterizing RSA 508:10 as a grace period provision.

Finally, Skip contends that legislative history regarding RSA 564-B:10-1005 supports his position. But, in conducting statutory interpretation, the court will turn to legislative history only if the statute is ambiguous. See, e.g., Petition of State, 175 N.H. 587, 589 (2023). Here, the court does not find that RSA 564-B:10-1005 or RSA 508:10 is ambiguous. As such, the court has no occasion to consider legislative history.

For the foregoing reasons, the court concludes that RSA 564-B:10-1005(d)'s prohibition on tolling does not preclude application of RSA 508:10 in this case. Therefore, RSA 508:10 applies. Moreover, Skip does not dispute that, if RSA 508:10 applies, the instant suit meets the requirements of that statute. See Vanz, LLC v. PMD Fin. Grp., LLC, Civ. No. 17-cv-145-LM, 2019 WL 1406150, at *5 (D.N.H. Mar. 28, 2019) (explaining requirements to file a second suit under RSA 508:10). Thus,

even assuming Evan's suit was brought after the limitations period set forth in RSA

564-B:10-1005(a) had expired, it is saved by RSA 508:10.[10]

## CONCLUSION

Skip's motion to dismiss (doc. no. 30) is denied.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

December 4, 2023

cc:     Evan Gray, pro se
        Counsel of Record

---

[10] Because the court concludes that Evan's suit is permitted by RSA 508:10, it does not reach Evan's other arguments in opposition to Skip's motion to dismiss.

23